In the Matter of the Claim of WILMOT M. CHURCHILL, Respondent, against FINGER LAKES GARAGES, INC., Employer; CONTINENTAL CASUALTY COMPANY, Insurance Carrier, Appellant.
STATE INDUSTRIAL BOARD, Respondent.

Third Department, July 2, 1941.

*Mial V. B. Smith*, for the appellant.

*John J. Bennett, Jr., Attorney-General*, by *Joseph A. McLaughlin, Assistant Attorney-General in Charge* [*John F. Loehr, Assistant Attorney-General*, of counsel], for the State Industrial Board, respondent.

*Edmund Clynes*, for the claimant, respondent.

SCHENCK, J.  This is an appeal by the insurance carrier from an award and decision of the State Industrial Board, dated May 22, 1940, which revised and amended the trial referee's prior award

to the claimant, Wilmot M. Churchill, of permanent partial disability benefits under the Workmen's Compensation Law.

By stipulation the findings of fact made by the Board are agreed upon and the issue on appeal is limited to a single question, namely, whether or not the Board employed the correct method of computing the reduced earnings of the claimant-respondent for the period February 23, 1939, to April 25, 1940. For the reasons set forth below, I am convinced that the Board did not employ the proper and correct method of computation with respect to the calculation of the claimant's reduced earnings.

Claimant, Wilmot M. Churchill, was injured on the 27th day of January, 1938. At the time of his injury he was employed by the now defunct Finger Lakes Garages, Inc., as an automobile salesman, working on commissions only. During the period over which the dispute before us arises, the claimant worked for commissions only with his present employer, The Cayuga Motors Corporation.

Claimant Churchill was *temporarily totally* disabled from the date of the accident until May 9, 1938, and for this period he was awarded the maximum rate of compensation, twenty-five dollars per week, the Board having found that in the year prior to his injury the claimant earned $2,535.31. This figure, when divided by 52, set the average weekly wage for that year at $48.76. Neither the appellant nor the respondents contested this figure, or the manner in which it was derived as the method of determining the average weekly wage of the claimant for the year prior to the accident.

After May 9, 1938, the Board determined that the claimant was permanently partially disabled. The claimant returned to work and, at various hearings before the referee, awards on a basis of reduced earnings were made. These awards are not at issue on this appeal as limited by the stipulation, but are reproduced in the record under the stipulation for our consideration.

On October 17, 1939, the referee made an award for the periods from February 23, 1939, to May 1, 1939, and from June 1, 1939, to September 28, 1939. The earnings for the month of May were excluded on the ground that the claimant's earnings during that month exceeded his earnings before the accident, no mention being made by the referee concerning the individual weekly earnings during May.

The carrier-appellant applied to the Board for a review and rescission of the award of October 17, 1939, contending that the average weekly earnings for the period in question should be computed from the claimant's income for the entire period, including the month of May.

On this application, the Board found that the referee had improperly calculated the reduced earnings. The referee had fixed the reduced earning rate, as indicated by the payrolls submitted, by dividing the aggregate time period into three parts and finding a separate reduced earning rate for each part. The Board remitted the case and required weekly payroll statements. After these weekly statements had been submitted to it, the Board, on May 22, 1940, made the award appealed from here.

The award made by the Board on May 22, 1940, covers the period from February 23, 1939, to April 25, 1940. It aggregates $767.68. The award is made on a week to week basis. It is computed by subtracting from $48.76, the fixed weekly wage for the year prior to the accident, the amount which claimant Churchill earned during any particular week. Sixty-six and two-thirds percentum of the figure arrived at by this subtraction is the amount which the carrier was ordered to pay to the claimant. For the weeks in which the claimant's earnings exceeded the $48.76 standard, the Board made no awards, and for those weeks in which the claimant's reduced earnings, after the computation set out above, exceeded the maximum set in subdivision 6 of section 15 of the Workmen's Compensation Law, the Board awarded the maximum twenty-five dollars allowance found there.

On examining the sixty-one-week period from February 23, 1939, to April 25, 1940, I find that in twenty-four of those sixty-one weeks the claimant's earnings exceeded the $48.76 figure previously determined by the Board, that in nineteen of those weeks claimant earned nothing, and that in the remaining eighteen weeks he earned less than $48.76.

The total earnings over this sixty-one-week period were $2,399.93, to which, by reason of the Board's award, $767.68 must be added, creating a total of $3,167.61. This figure, divided by 61, gives an average weekly wage of $51.92, a gain of $3.16 per week over the average weekly wage, as previously computed by the Board, over a fifty-two-week period, prior to the accident. The foregoing computation is based on exactly the same principle used by the Board in determining the average weekly wage for a period of a year prior to the accident.

I am in accord with the counsel for the Industrial Board when he remarked in his brief that the statute is designed to secure immediate money payments to an injured employee, whose earnings are cut off by the hazards of industrial activity, but by the same token, I cannot see how in the light of the expressed wording of the statute, subdivision 6 of section 15, that " in no event shall compensation when combined with decreased earnings or earning capacity

exceed the amount of wages which the employee was receiving at the time the injury occurred," the act can be construed to increase the earnings of an injured employee over his earnings prior to his injury and, in effect, force the carrier to pay the injured employee a bonus over and above his average weekly earnings, as found by the Board itself, for a substantial period prior to the accident. The statute manifestly intends to indemnify the employee who is partially disabled by adding to his reduced earnings a sum which will give an aggregate equal to his earnings prior to the accident.

In other words, the Board itself uses a substantial period of time in computing the claimant's average weekly wage. Why, then, should the carrier be denied the right to show, by precisely the same method of computation, that the average weekly wage after the accident, when its compensation payments are added to reduced earnings, exceeds the result first found by the Board itself?

The respondent Industrial Board urges that it has followed the standards set up in paragraph v of subdivision 3 of section 15 which provides the formula for computing reduced earnings, and that that must necessarily be construed to mean the weekly earning capacity since it is to be subtracted from average weekly wages.

However, in subdivision 6 of the same section the maximum and minimum weekly payments which may be made are set out, and this subdivision concludes with the words already referred to, "but in no event shall compensation when combined with decreased earnings or earning capacity exceed the amount of wages which the employee was receiving at the time the injury occurred." The Board argues that none of its weekly awards exceeds the maximum, and that since it made no awards for the weeks in which the claimant's earnings exceeded the $48.76 standard, its computation does not violate subdivision 6 of section 15 of the act. With these contentions I am unable to agree.

It is necessary to consider this question from both sides in order to reach a reasonable conclusion, and admittedly the wording found in section 15 is ambiguous. However, on this appeal, we are presented with the situation in which the fruits of the claimant's efforts in any one given week may not appear on the payrolls until the time when his vendee takes delivery of the automobile sold. That delivery date may be postponed for a long period of time, since the average purchaser of an automobile does not intend to buy it on the date it is demonstrated, and since the average dealer must get his shipments more in conformity with the manufacturer's output than with his buyer's demands. It is not a situation which lends itself readily to exact weekly computation, but is more justly solved by the application, as suggested by the

carrier-appellant, of a computation based on a substantial period of time.

The precise question of how to determine the reduced earnings rate for the respondent Churchill is not before us, but under section 22 of the Workmen's Compensation Law the Board has the authority to adjust rates from time to time, as the circumstances warrant. In view of the circumstances surrounding this claimant's employment, I feel that the rate should be established over a substantial period of time, with a continuing rate of the eight dollars minimum under subdivision 6 of section 15, pending periodic adjustments by the Board, over a long term computation with respect to the claimant's reduced earnings. Such a method of computation will best serve the interests of substantial justice.

The award and decision of the State Industrial Board, dated May 22, 1940, should be reversed in conformity with the directions set forth above.

HILL, P. J., CRAPSER, BLISS and FOSTER, JJ., concur.

Award and decision of the Industrial Board reversed and matter remitted to the State Industrial Board.